# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA MARIE SANDOVAL CRUZ, ) | 1:08cv01737 DLB |
| ) | |
| ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, ) | SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## BACKGROUND

Plaintiff Angela Marie Sandoval Cruz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 26, 2008, the matter was reassigned to the Honorable Dennis L. Beck for all purposes.

1

# **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff protectively filed her applications for DIB and SSI on October 27, 2005, alleging disability since December 31, 2002, due to her left side back, hand and knee injury.[3] AR 101-104, 105-107, 128, 136. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 65-68, 72-76, 78. On March 4, 2008, ALJ Michael J. Haubner held a hearing. AR 22-47. ALJ Haubner denied benefits on May 23, 2008. AR 10-21. The Appeals Council denied Plaintiff's request for review on August 26, 2008. AR 4-6.

Hearing Testimony

ALJ Haubner held a hearing on March 4, 2008, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudian. AR 24. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 24, 37-44.

Plaintiff was born in September 1971. She completed the twelfth grade and one Spanish course in college. AR 27-28. In 2002, she did home health care of one person. AR 28.

Plaintiff lives with her husband and four children. Her youngest child is 7 months old. Her oldest child is 15 years old. The other two are 8 and 2 years old. Two children are at home during the day and two are in school. AR 29.

Plaintiff has a driver's license. AR 29. Her husband works full-time outside the home. AR 29-30. She has no restriction on her driver's license. She drives an automatic pick-up truck. She lives in a house. There are three steps to get up inside her house, but no stairs to a second floor or a basement. AR 30. She is able to care for her own personal needs. She brushes her own teeth, puts on her own clothes, showers and bathes herself, and picks up her own utensils and feeds herself. AR 30-31. She has to dress and feed her baby. She has to help the two-year-old child dress and bathe. AR 31.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] On her SSI application, Plaintiff alleged an onset date of December 1, 2004. AR 101. On her DIB application, Plaintiff alleged an onset date of December 31, 2002. AR 105.

Plaintiff testified that she cooks or prepares meals twice a day. AR 31. She does dishes every three days. AR 31-32. She goes grocery shopping twice a month. She goes shopping for non-grocery items once every two months. She goes to church once a week. She does not go out to eat. She visits with family or friends once a month. She talks on the phone every day for about twenty minutes. She does not have a cell phone. She does not do any yard work. She does not make her bed and does not change the sheets. Her oldest does the laundry, but Plaintiff does it once a month. Plaintiff sweeps once every two weeks and vacuums once a week. AR 33. She does not mop. AR 33-34. She does not dust the furniture or take out the trash. AR 34.

Plaintiff testified that she helps her children with their homework. Her children get homework everyday. She spends about thirty minutes helping her children. She went to her children's school functions once in the year of the hearing. AR 34.

Plaintiff testified that her conditions are knee problems, low back problems and a history of contusions with her hands. AR 34. She can lift and carry 15 pounds. She can sit for an hour and a half before she has to get up and move around. She can stand for 45 minutes before she has to sit down. She can walk half a block at one time. She has difficulty gripping or grasping things with either hand. She can hold a coffee cup or a pencil for 15 minutes before she has to put it down. She would have to rest for 20 minutes before she could hold something for another 15 minutes. AR 35.

Plaintiff testified that she has to lie down during the day because of pain, fatigue or another reason. AR 35-36. She has to elevate her feet or lie down four hours out of an eight-hour day. She has difficulty concentrating or paying attention to things. The longest she can focus on something is an hour. AR 36.

Plaintiff testified that she does not have any criminal convictions. She is fully compliant with all her treatment and medications. AR 36.

VE Cheryl Chandler also testified. She had an opportunity to review the work history exhibits and was present during the course of the hearing. The VE questioned which of the jobs was SGA. AR 37-38. The ALJ clarified that they were only looking at the 2002 job. The VE asked whether Plaintiff was dispensing medication and doing light nursing care in that job. AR

3

38. Plaintiff testified that when she was doing in-home health care services she gave medications and helped with personal needs. AR 38.

The VE classified Plaintiff's past relevant work as a home attendant job, which is an SVP 3 and medium. It is consistent with the DOT and is the lowest level of semiskilled. In her past relevant work, Plaintiff would have to do some cooking, basic math, record keeping, and very basic nursing care, like bathing, washing. There was no transferability of skills. AR 39.

For the hypothetical questions, the ALJ asked the VE to assume a person of the same age, education, language and experience of Plaintiff. AR 39. For the first hypothetical, the ALJ also asked the VE to assume a person who was unable to do work that requires frequent bending and heavy lifting, but could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk six hours out of eight with normal breaks, could sit without restriction, could kneel, squat, and stair climb occasionally. AR 19. The VE testified that this person could not do Plaintiff's past relevant work. AR 40. This person could do other general work consistent with unskilled, light work and sedentary. AR 40. The VE indicated that the grids apply for the exertional levels of unskilled sedentary and light. AR 40.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk about six hours out of eight, and could sit about six hours out of eight. This person had an unlimited ability to push and pull. The person could frequently climb, including ladders, ropes and scaffolds, could frequently balance, crawl, and hover, and could occasionally stoop, kneel and crouch. AR 40. The VE testified that there was no past relevant work because of a restriction to light work. AR 41. The VE testified that the worlds of unskilled light and sedentary would be available to this person. AR 41.

For the third hypothetical, the ALJ asked the VE to assume a person with a disability between precluding heavy work and substantial work. This person had lost 67 and a half percent of their pre-injury capacity for activities such as bending, stooping, lifting, pushing, pulling or other activities involving comparable physical effort, including prolonged sitting and standing. The VE testified that there was no past relevant work because of the standing and sitting

limitations. AR 41. There was other work with a sit/stand option. The VE testified that with 75% erosion, there are 28,725 cashier jobs in California at light, unskilled with a sit/stand option. AR 42. At approximately 50% of the numbers, the VE also estimated that there are 5,000 ticket taker jobs and 10,000 clerical, general office worker jobs, remaining in unskilled, light. AR 43. Those numbers multiplied by 10 would give approximate U.S. availability. AR 43.

For the fourth hypothetical, the ALJ asked the VE to assume a person who could lift and carry 15 pounds, could sit an hour and a half at a time, could stand 45 minutes at a time, could walk half a block at a time, could grip or grasp something 15 minutes at a time and then rest his/her hands 20 minutes. This person would need to lie down 4 hours of 8 and could concentrate in one hour increments. AR 43. The VE testified that this person could not perform Plaintiff's past relevant work and could not perform any other generally appearing work. AR 43-44.

Plaintiff further testified that she uses a cane. AR 44. It was prescribed right after her knee surgery, but Plaintiff could not remember the year or the name of the doctor.[4] AR 44. Plaintiff testified that after the surgery, he told her to get crutches or a walker. She was still having problems, so he suggested a four-pronged cane. After she got better, Plaintiff found that she could just use a stick cane. Plaintiff last saw the doctor in 2000 or 2001. AR 45. Plaintiff now sees Dr. Gonzales, a family doctor, for regular medical treatment once every three months. Dr. Gonzales knows that Plaintiff is using a case and says to use it when necessary. She uses it twice a week. AR 46.

Medical Record

On June 30, 1998, Plaintiff received treatment from G. A. Fujihara, M.D., MPH, at Concentra Medical Centers. Plaintiff reported that she tripped and fell, landing on both knees, jamming her thumb and spraining her left wrist. Dr. Fujihara assessed Plaintiff with left and right knee contusions with strain and left hand contusion with sprain especially of the thumb. She was prescribed Anaprox DS and Darvocet. Dr. Fujihara placed her on light duty status of no kneeling or squatting and using her left hand sparingly. Dr. Fujihara did not anticipate any permanent

---

[4] According to counsel, Plaintiff's surgery was on June 27, 2000, with "Dr. Gazall." Plaintiff confirmed the doctor. AR 45.

5

disability and anticipated complete recovery without any residual problems. AR 199-200. X-rays of both knees and Plaintiff's left hand were negative. AR 201.

On July 1, 1998, Plaintiff saw Dr. Fujihara for her hand and knee. Following examination, Dr. Fujihara recommended that Plaintiff remain off work for one more week. AR 197. X-rays of Plaintiff's pelvis and left hip were negative. AR 201.

Between July 6, 1998 and September 27, 1999, Plaintiff saw Anthony Montana, M.D., at Concentra Medical Centers, for her left knee strain and left hand contusion. AR 179-196. On July 6, 1998, Dr. Montana recommended that Plaintiff remain on temporary disability, but placed her on modified duty from August 10 to August 12, 1998. AR 195, 189. On August 10, 1998, Plaintiff reported that she worked a full shift. AR 188. On August 17, 1998, Dr. Montana noted that Plaintiff had "not had anymore physical therapy due to extended work hours." AR 187. In July 1999, Dr. Montana reported that Plaintiff had been laid off. AR 180. In August 1999, Plaintiff was referred to Dr. Ghazal for orthopedic consultation. AR 179. On September 27, 1999, Plaintiff reported to Dr. Montana that Dr. Ghazal recommended bilateral knee arthroscopy and lateral release. She was to remain on regular work status and be transferred to Dr. Ghazal. AR 178.

On September 26, 2000, Plaintiff underwent an orthopaedic consultation by Craig R. MacClean, M.D. Plaintiff complained of right and left knee pain with any squatting, kneeling or stair climbing, pain behind the left thigh and radiating into the left hip on walking, low back pain with any prolonged standing for more than 10-15 minutes, any walking for more than five minutes and any lifting more than 30 pounds. She also complained of pain in the palm of her left hand and base of thumb brought on with any pushing or pulling activities. AR 206. Dr. MacClean diagnosed her with bilateral hand contusion with persistent left thumb pain, chondromalacia patellae, both knees, status post arthroscopic debridement, left knee, with chondroplasty of medial femoral condyle and patella, lateral retinacular release, and low back strain with underlying L5-S1 degenerative disk disease, rule out associated disk protrusion. AR 210.

Between February 26, 2001, and February 10, 2004, Plaintiff received treatment from Berj. T. Kalamkarian, M.D., for lumbrosacral radiculopathy, degenerative disease of the lumbar

spine and chronic low back pain. AR 231-277. 233, On March 9, March 28 and May 23, 2001, Plaintiff underwent a lumbar epidurogram and L3-4 epidural steroid injection. AR 260, 263, 265. On August 15, 2001, Plaintiff underwent an L3-4, L4-5 and L5-S1 facet block on the left. AR 256-57. On September 15, 2003, Plaintiff received a bilateral L3-4 and L4-5 radio frequency facet rhizotomy. AR 241. On March 8, 2004, Plaintiff received a lumbar epidurogram and L5-S1 epidural steroid injection. AR 239. On February 10, 2005, Dr. Kalamkarian discontinued Plaintiff's medications due to pregnancy. AR 231.

On January 14, 2002, Charles J. Heller, M.D., completed an Agreed Medical Examination. Plaintiff complained of constant pain in the thenar eminence of her left hand, in her low back and in her left knee. AR 223. On examination, Plaintiff ambulated slowly and deliberately, using a cane in the right hand. She was able to heel and toe walk. AR 223. Her left hand had tenderness of the thenar musculature, but no swelling, no crepitus, and no temperature differentiation between the two hands. There was normal sensation and circulation in the left hand and distal pulses were present and equal. AR 223. Plaintiff did not put forth full effort on the Jamar Dynamometer. AR 224. Dr. Heller opined that if Plaintiff had put forth full effort there would be an estimated 15% grip loss. AR 224.

Examination of Plaintiff's back revealed no tenderness over the left sacroiliac joint and left hip joint. There was no evidence of scoliosis. Lateral rotation and lateral bending were diminished 25%. Straight leg raising test was positive on the left at 40 degrees with hamstring tightness. The Gaenslen's and Patrick's signs were negative. The deep tendon reflexes in the lower extremities were present and equal. There was normal sensation and motor power to the lower extremities, and the distal pulses were present and equal. AR 224.

Examination of Plaintiff's left knee revealed three well-healed arthroscopy scars. There was moderate effusion present within the left knee joint. AR 224. Her knee strength for extension and flexion was normal. AR 225.

Following the examination, Dr. Heller opined that Plaintiff was not capable of returning to her usual and customary occupation of production activities for Vendo. AR 227. At Vendo, Plaintiff was required to work with pneumatic tools and to push cabinets onto the line. In her

"essential job duties," she was required to lift from 5-50 pounds. AR 221. She was a Medically Qualified Injured Worker. AR 227.

On October 11, 2004, Dr. Heller completed an Agreed Medical Examination re-evaluation of Plaintiff. He spent 45 minutes with her. AR 212. Dr. Heller diagnosed degenerative disk disease, L4-5, L5-S1, aggravated by the injury of June 30, 1998. AR 215. Dr. Heller opined that Plaintiff's condition had reached maximal medical improvement and was permanent and stationary with regard to the low back. AR 216. Dr. Heller further opined that Plaintiff's work restrictions were a "disability between precluding heavy work and a disability precluding substantial work." AR 216. This opinion contemplated that Plaintiff had lost "approximately 62 ½% of her pre-injury capacity for such activities as bending, stooping, lifting, pushing, pulling, climbing and other activities involving comparable physical effort, including prolonged sitting or standing." AR 216.

On March 6, 2006, Benjamin Chang, M.D., completed a consultative orthopedic evaluation. Plaintiff complained of chronic low back pain and left knee pain. AR 274. On examination, Plaintiff had a mildly antalgic gait and was able to walk on her toes and heels. Her cervical spine range of motion was within normal limits. She had mild tenderness to percussion in the lumbar area of her spine, but no sciatic notch tenderness. Her straight leg raising was to 80 degrees bilaterally without pain. AR 275. She had mild tenderness over the medial and lateral aspect of the left knee with mildly positive McMurray's test. Her pulses were normal. Her hand grip strength was 5/5 bilaterally. She had normal muscle bulk and tone with no evidence of muscle atrophy. Her reflexes and sensation were normal. AR 277.

Dr. Chang diagnosed Plaintiff with chronic mechanical low back pain, chronic left knee pain, rule out meniscus tear status post arthroscopic surgery. AR 277. Dr. Chang opined that Plaintiff was unable to do work that requires frequent bending and heavy lifting. She could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk six hours out of an eight hour day with normal breaks, could sit without restriction and occasionally could kneel, squat and climb stairs. AR 278.

On April 5, 2006, D. D. Sharbaugh, the state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form. AR 279-86. Dr. Sharbaugh opined that

Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about six hours in an 8-hour workday, and could push and/or pull without limitation. AR 280. She frequently could climb, balance, stoop and crawl. She occasionally could stoop, kneel and crouch. AR 281. She had no manipulative, visual, communicative or environmental limitations. AR 282-83.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of status post left knee arthroscopy, history of bilateral patella chondromalacia, degenerative disc disease lumbar spine and history of lumbar radiculopathy. AR 15. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours out of an 8-hour day, and occasionally kneel, squat and climb stairs. AR 17. Although Plaintiff was unable to perform past relevant work, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could perform. AR 19-20.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are

9

supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g). Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since December 31, 2002; (2) has an impairment or a combination of impairments that is considered "severe" (status post left knee arthroscopy, history of bilateral patella chondromalacia, degenerative disc disease lumbar spine and history of lumbar radiculopathy) based on the requirements in the Regulations (20 CFR §§ 404.1520, 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) there are jobs that exist in significant numbers in the national economy that she can perform. AR 15-20.

## DISCUSSION

In this case, Plaintiff contends that the ALJ erred in his consideration of Dr. Heller's opinion, which was rendered in the context of a worker's compensation claim. Specifically, Plaintiff asserts that the ALJ had an unfettered obligation to translate the worker's compensation terms of art in Dr. Heller's agreed medical evaluation to language useful in the Social Security

context. Opening Brief, p. 6. To support this assertion, Plaintiff relies on *Desrosiers v. Secretary of Health & Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). *Desrosiers* does not require an ALJ to "translate" worker's compensation terminology. In *Desrosiers*, the court found error where an ALJ failed to recognize that the categories of work under the Social Security scheme are "measured quite differently" from the worker's compensation scheme. *Id.* at 576. While Social Security categories "are differentiated primarily by step increases in lifting capacities," worker's compensation categories are not based on strength, but on whether a person sits, stands or walks for most of the day. Id. The ALJ in *Desrosiers* improperly equated the worker's compensation preclusion from heavy work with a preclusion from heavy lifting. Id.

In this case, there is no indication that the ALJ failed to recognize that there is a distinction between the worker's compensation scheme and the Social Security scheme. Indeed, the ALJ summarizes Dr. Heller's opinion, noting that the limitations "are couched in Workers' Compensation terms." AR 19. The ALJ discounted Dr. Heller's opinion because the limitations were somewhat vague and seemed too restrictive in light of the minimal objective findings. AR 19. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is inadequately supported by clinical findings. *See*, *e.g.*, *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). As cited by the ALJ, Dr. Heller's clinical findings in 2002 revealed that Plaintiff had tenderness of the thenar musculature of the left hand, but no swelling. The left hand had normal sensation and circulation with equal distal pulses. She had no muscle atrophy and Pahlen's Finkelstein's and Tinel's signs were negative. AR 16, 223. Plaintiff also did not put forth full effort on the Jamar Dynamometer. Plaintiff also had no tenderness over the left sacroiliac join or left hip joint, the Gaenslen's and Patrick's signs were negative, deep tendon reflexes in the lower extremities were equal with normal sensation and motor power. Her left knee join had a moderate effusion, but was stable. AR 16, 224. In 2004, Dr. Heller opined that Plaintiff should continue conservative treatment, but no surgical procedures or additional injections were needed. AR 217.

Plaintiff further contends that the ALJ misunderstood the definition and terminology used by Dr. Heller, pointing to the hypothetical presented to the VE utilizing Dr. Heller's opinion. A

review of the record reveals that the ALJ asked the VE to assume a person who "has a disability between precluding heavy work and substantial work," which "contemplates this person has lost 62 and a half percent of their pre-injury capacity for activities such as bending, stooping, lifting, pushing, pulling, or other activities involving comparable physical effort including prolonged sitting and standing." AR 41. The ALJ's description was taken directly from Dr. Heller's opinion regarding Plaintiff's restrictions and is nearly verbatim. AR 216.

Although the ALJ questioned whether the VE could answer the hypothetical because he was "not sure we knew what her pre-injury was to reduce it by 62 percent," the VE thought she could answer it. AR 41. Using Dr. Heller's restrictions, the VE testified that there was no past relevant work, but there were other light jobs. AR 41-42. In his decision, the ALJ noted that even if he adopted Dr. Heller's limitations, the VE had identified other light jobs. AR 19. An ALJ may rely on a VE's testimony, including testimony regarding the number of relevant jobs in the national economy. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Plaintiff argues that the ALJ's statement at the hearing that "[j]ust because she was doing a medium job doesn't mean that was her maximum capacity" demonstrates legal error because in worker's compensation terms "pre-injury capacity" is the maximum capacity set by the claimant's past work. AR 41; Opening Brief, p. 10. However, Plaintiff herself quantifies pre-injury capacity as "simply that amount which [she] was required to perform in her past work activity," not her maximum capacity. Opening Brief, p. 9. Contrary to Plaintiff's assertion, the ALJ was not required to utilize Plaintiff's proposed algebraic formula to determine Plaintiff's remaining work capacity based on the worker's compensation evaluation identifying a 62 ½% loss of pre-injury capacity. This is particularly true where the ALJ relied on the opinion of Dr. Chang, a consultative examiner, who provided an opinion as to Plaintiff's functional limitations based on the Social Security scheme. AR 19, 278. A consultive examiner's opinion constitutes substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, opinions concerning degrees of disability peculiar to worker's compensation are not conclusive in a Social Security case. 20 C.F.R. §§ 4040.1504, 416.904; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (citing *Desrosiers,* 846 F.2d at 576).

12

Moreover, to the extent that Dr. Heller opined that Plaintiff could not return to her previous work doing production activities, it was not an opinion that she was precluded altogether from working. A physician evaluating a plaintiff in the context of a worker's compensation case is focused on deciding whether the plaintiff could return to her past job and not whether there was other work she could perform. (*See*, *e.g.*, *Mattox v. Astrue*, 2008 WL 761073, *9 (E.D.Cal. Mar. 17, 2008)). Here, the work that the ALJ found that Plaintiff can do now is a different type of work. AR 20.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Angela Marie Sandoval Cruz.

IT IS SO ORDERED.

Dated: **February 11, 2010**          /s/ Dennis L. Beck
                                      UNITED STATES MAGISTRATE JUDGE